

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| LANDON CORDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 6:07-CV-0789-LSC |
| | ) | |
| ADAM HADDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Landon Cordell, sued Defendants for alleged violations of his

due process rights, false arrest and imprisonment, and assault and battery.

The Court currently has for consideration two motions to dismiss.  Adam

Hadder ("Hadder") filed his motion to dismiss on February 15, 2008.  John

Mark Tirey ("Tirey") and Walker County filed a motion to dismiss on

February 21, 2008.[1]  (Docs. 43, 44.)  The issues raised in these motions have

---

[1]Defendants originally filed three separate motions to dismiss.  *See* Docs. 7, 9, 12.
On January 23, 2008, the Court entered an Order allowing Plaintiff seven days to amend
his Complaint.  *See* Doc. 36.  Defendants were thereafter ordered to supplement their
previously filed briefs in support of dismissal in light of additional facts and arguments
presented by Plaintiff.  *Id.*  On February 15, 2008, Hadder submitted a new motion to

been fully briefed by all parties and are now ripe for decision.  Upon due consideration and for the reasons stated herein, the motions to dismiss are granted in part and denied in part.

II.    Facts.[2]

Plaintiff drove with a friend to a club in Tuscaloosa, Alabama, on April 30, 2005.  While at the club, Plaintiff met some of his friends from Walker County.  Walker County Deputy Sheriff Adam Hadder, then assigned to the Walker County Narcotics Enforcement Team[3] ("NET"), and Alabama Beverage Control Board officers Steve Smith ("Smith") and Wes Brown ("Brown") were also at the club that evening.

Prior to April 30, 2005, Plaintiff had twice been stopped by Hadder in Walker County for traffic related incidents.  During one of the stops, Hadder

---

dismiss (Doc. 43).  Similarly, on February 21, 2008, Tirey and Walker County filed an additional motion to dismiss.  (Doc. 21).  On March 24, 2008, the Court mooted the originally filed motions and considered the grounds set forth therein as part of the subsequently filed motions to dismiss.  *See* Doc. 51.

[2]For purposes of this opinion, the facts are accepted as alleged in Plaintiff's Complaint.  Recitation of the facts alleged by Plaintiff in this opinion is not to be construed as a verification that the allegations are true.

[3]Tirey, as the sheriff of Walker County, was responsible for hiring Hadder.  He was also responsible for supervising Hadder's day-to-day activities as a member of the NET Team.

pushed Plaintiff around his car and searched his vehicle for over an hour while Plaintiff stood outside in the cold weather.  After searching Plaintiff's vehicle, Hadder released him without writing a ticket.

There were no words exchanged between Plaintiff and Hadder during the three to four hours that Plaintiff was at the club that evening.  When Plaintiff and his friend left the club, Hadder, Smith, and Brown (jointly referred to as "the officers") followed them outside.  Once outside, the officers yelled at them to stop.  When Plaintiff stopped, the officers surrounded him and one of the officers hit him over the head with an unknown object, knocking him to the ground unconscious.  When Plaintiff regained his consciousness, the three officers were beating him while he was laying on the ground.  When the officers finished, they left the scene and Plaintiff had to be transported to the hospital in an ambulance.

At no time during the beating did Plaintiff strike the officers, resist their force, or otherwise use any type of force against the officers, nor had he committed any type of wrongful act that evening.  As a result of the beating, Plaintiff suffered severe bruising, cuts, and swelling to his head, arm, and chest.

III.    Standard.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.  "When considering a motion to dismiss, all facts set forth in plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of plaintiff.  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  Ordinarily, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

IV.    Analysis.

Plaintiff alleges various state law claims, as well as constitutional violations under 42 U.S.C. § 1983 ("§ 1983"), against Hadder, Tirey, and Walker County.  Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage of any State . . ., subjects, or causes
> to be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983.

    A.    Adam Hadder.

Only two allegations are required to state a cause of action under § 1983. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). *See also Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); *Almand v. DeKalb County*, 103 F.3d 1510, 1513 (11th Cir. 1997); *Tillman v. Coley*, 886 F.2d 317, 319 (11th Cir. 1989); *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).

A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state. *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995) (citing *West v. Atkins*, 487 U.S. 42, 48-50 (1988)). Not all acts by state employees are acts under color

of law; rather, the "dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Edwards*, 49 F.3d at 1523 (citing *Monroe v. Pape*, 365 U.S. 167, 183-84 (1961), *overruled on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

Taking the factual allegations of the Complaint as true, it is clear that Plaintiff alleged that he was deprived of a constitutional right. Plaintiff's claim that he was assaulted and battered for no justifiable reason by Hadder implicates the constitutional right to be free from the use of excessive force. This right is protected by the due process clause of the Fourteenth Amendment. The critical issue in this case, however, is whether Hadder qualifies as a state actor based upon his role in Plaintiff's alleged assault and battery.

In the Complaint, Plaintiff claims that he had knowledge that Hadder was a law enforcement officer for Walker County because he was previously detained by Hadder on two occasions for traffic stops. On the night in question, Plaintiff alleges that it was this knowledge that caused him to stop walking to his car when he was instructed to do so by the officers. The fact

that Hadder was a known Walker County law enforcement officer is the only

fact pled in the Complaint that supports Plaintiff's position that Hadder was

acting under the color of law.[4]  The Complaint does not allege that Hadder

demonstrated any other indicia of a law enforcement officer, such as:

wearing a uniform, displaying a badge or a gun, or driving a sheriff's office

vehicle.  It does not appear that Hadder identified himself as an officer or

ever attempted to arrest Plaintiff.  Instead, the only connection alleged in

the Complaint that the beating had to law enforcement activity was

Plaintiff's previous contact with Hadder during earlier traffic stops.

In *Parrilla-Burgos v. Hernandez-Rivera*, 108 F.3d 445 (1st Cir. 1997),

an off-duty police officer shot and killed a patron outside of a bar.  Despite

the fact that the officer showed his police identification, announced to

other patrons that he was there to "establish the peace and order," and

used his service revolver in the shooting, the First Circuit Court of Appeals

---

[4]Following a hearing held on December 19, 2007, the Court allowed the Plaintiff an opportunity to amend his Complaint to cure several deficiencies in his claims.  One major area of concern for the Court was Plaintiff's failure to plead facts which allege that Hadder was acting under color of law.  On February 1, 2008, Plaintiff filed his amended Complaint.  This amended Complaint failed to allege any further facts demonstrating that Hadder acted under color of law on the night in question.

concluded that the officer was not acting under color of law.  *Id.* at 451.  In reaching that conclusion, the Court stated that the "key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law."  *Id.* at 449 (internal citations omitted).

Similarly, the United States Supreme Court concluded many years ago that "[i]t is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded."  *Screws v. United States*, 325 U.S. 91, 111 (1945).  Consistent with the Supreme Court's holding, there are numerous opinions from the other Circuit Courts holding that a police officers' acts are not violative of the Constitution under similar facts to those of this case.  *See, e.g.*, *Latuszin v. City of Chicago*, 250 F.3d 502, 506 (7th Cir. 2001) (holding that a police officer who hit a pedestrian while driving his car under the influence of alcohol was engaged in "entirely private behavior" because the plaintiff's Complaint made no allegation that [the defendant] was engaged in police activity, that he displayed any police power, or that he possessed any indicia of his office at the time of the incident); *Huffman v. County of L.A.*,

147 F.3d 1054 (9th Cir. 1998) (drunk off-duty police officer who was not wearing uniform, using his own gun, and never identified himself as an officer, was not acting under color of state law when he shot plaintiff); *Roe v. Humke*, 128 F.3d 1213 (8th Cir. 1997) (off-duty officer who assaulted minor was not acting under color of state law when the officer was not wearing gun or badge, he was driving his own vehicle, and he was not acting pursuant to his official duties); *Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996) (district court was not required to find that the officer acted under color of state law merely because he was a law enforcement officer; his actions of assaulting and attempting to rob victims were the deputy's private actions and not under color of law); *Barna v. City of Perth Amboy*, 42 F.3d 809 (3rd Cir. 1994) (police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law); *Gibson v. City of Chi.*, 910 F.2d 1510 (7th Cir. 1990) (acts committed by a police officer, even while on duty and in uniform, are not under color of state law unless they are in some way related to the performance of police duties); *Pitchell v. Callan*, 13 F.3d 545 (2nd Cir. 1994) (off-duty officer who, while drunk at his home, used his personal weapon to

shoot guest was not acting under color of law); *Delcambre v. Delcambre*, 635 F.2d 407 (5th Cir. 1981) (assault by police chief during family argument at police headquarters was not an action under color of state law); *Watkins v. Oaklawn Jockey Club*, 183 F.2d 440 (8th Cir. 1950) (holding that an off-duty police officer serving as a racetrack security officer was not acting under color of state action when he evicted plaintiff from track premises).

Eleventh Circuit case law is also consistent with these holdings from other circuits.  *See*, e.g., *Almand*, 103 F.3d at 1515 (officer's conduct of gaining access to an apartment on pretense of discussing police business, leaving, then forcibly re-entering and raping the occupant was a "private act not accomplished because of power possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law." (internal citation and quotation marks omitted)).

Furthermore, Plaintiff has failed to present the Court with any case law demonstrating that courts from any jurisdiction have found that an officer acted under the "color of law" under facts even remotely similar to those in this case.  In fact, in three of the five cases cited by Plaintiff to support his position, the reviewing court ultimately concluded that the

wrongdoer was not acting under the color of law. *See* Doc. 9 at 4-6 (citing *Morgan v. Tice*, 862 F.2d 1495 (11th Cir. 1989); *Lawson v. Wiggins,* 557 F. Supp. 500 (N.D. Ala. 1983); *Barna v. City of Perth Amboy*, 42 F.3d 809 (3rd Cir. 1994)). In the two cases cited by Plaintiff where the court did find that the defendant acted under the color of law, *Traver v. Meshiry*, 627 F.2d 934 (9th Cir. 1980), and *Ott v. City of Mobile*, 169 F. Supp. 2d 1301 (S.D. Ala. 2001), the facts were replete with the very indicia of office that is lacking from Plaintiff's Complaint in this case. In these cases, the officers identified themselves as law enforcement officers, showed police identification, and displayed weapons.

It is clear that in order to establish "color of law," Plaintiff must show that Hadder was acting pursuant to ***some authority*** possessed by virtue of his employment by the state. Plaintiff has failed to make this showing, and therefore cannot meet the elements of his § 1983 case. Hadder's Motion to Dismiss is due to be granted as to Plaintiff's § 1983 claims.[5]

---

[5]In Hadder's original motion to dismiss, he argued that Plaintiff's § 1983 claims should be dismissed for the reasons discussed above, specifically that he was not acting under color of law on the night in question. However, when the Court allowed Hadder to supplement his motion to dismiss in light of Plaintiff's amended complaint, he also argued that he was entitled to qualified immunity. At a conference held in chambers

Because Plaintiff's Complaint fails to state a violation of constitutionally protected rights, the only claims remaining against Hadder are state law claims for assault and battery.  Hadder has presented no arguments to the Court that the state law claims against him should be dismissed, therefore, Hadder's Motion to Dismiss is denied as to the pending state law claims for assault and battery.

B.     Sheriff Tirey.

Plaintiff also sued Tirey for alleged constitutional violations under § 1983 in both his official capacity as the sheriff of Walker County and in his individual capacity.  Plaintiff alleged that Tirey's acts, customs, and policies of ignoring previous incidents of excessive force and violence by Hadder and other Walker County law enforcement officers, and his failure to adequately train, supervise, and discipline Hadder and other officers, constituted deliberate indifference to Plaintiff's constitutional rights and resulted in the injuries that he suffered.

---

on March 25, 2008, Plaintiff's counsel assured the Court that this argument was being pursued only if Plaintiff successfully demonstrated that Hadder was acting under color of law.  Since Hadder was not acting under color of law, this defense is not applicable and will not be addressed further.

      1.    Official Capacity.

Plaintiff's claims against Sheriff Tirey in his official capacity are due to be dismissed because the Eleventh Amendment bars retroactive damage awards which must be paid by the state.[6] *See Parker v. Williams*, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity because the state neither consented to suit nor waived its Eleventh Amendment immunity); *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); *Carr v. City of Florence*, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity).

In addition, Plaintiff's official capacity claims must fail because 42

---

[6]Because suits against an official in his or her official capacity are suits against the entity the individual represents, we assume that this suit against Tirey in his official capacity as sheriff of Walker County is simply a recharacterization of a claim against the State of Alabama. *See Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985). As such, the Eleventh Amendment bars the award of damages for past injuries because such damages would be paid out of state funds. *See generally Alabama v. Pugh*, 438 U.S. 781 (1978). To the extent this claim may be against Tirey as representative of the county, Plaintiff will suffer no prejudice from a finding that the Eleventh Amendment bars the claim. Plaintiff can and did sue the county directly.

U.S.C. § 1983 prohibits *a person*, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).[7]  Thus, any claims against Sheriff Tirey in his official capacity should be dismissed because he is not a "person" as defined under § 1983.  *Id.  See also Carr v. City of Florence,* 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

      2.    Individual Capacity.

Sheriff Tirey is also entitled to qualified immunity against Plaintiff's individual capacity claims asserted under § 1983.  Qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting

---

[7]The Court notes that in reply to Tirey's originally filed Motion to Dismiss (Doc. 7), Plaintiff failed to present any argument to rebut Tirey's arguments with respect to dismissal of Plaintiff's official capacity claims under *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

Because qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, questions of qualified immunity must be resolved "at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal quotation marks and citations omitted).  It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the Complaint "fails to allege the violation of a clearly established constitutional right."  *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (quoting *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997)).

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Lee*, 284 F.3d at 1194.  The burden then

"shifts to the plaintiff to show that qualified immunity is not appropriate."

*Id.*  "The Supreme Court has set forth a two-part test for the qualified immunity analysis."  *Vinyard v. Wilson*, 311 F.3d 1340, 1349 (11th Cir. 2002).  A court must first determine "whether plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. at 736 (citations omitted).  "If a constitutional right would have been violated under the plaintiff's version of the facts, the next, sequential step is to ask whether the right was clearly established."  *Vinyard*, 311 F.3d at 1346 (internal quotation marks and citations omitted).

Furthermore, Plaintiff cannot merely rely on notice pleading in a § 1983 case involving qualified immunity.  Plaintiff's claims asserted pursuant to § 1983 must be subjected to the "heightened pleading" standard as articulated in *Dalrymple et. al. v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003). "[W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit . . . has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim."  *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d

1359, 1367 (11th Cir. 1998); *see also Dalrymple*, 334 F.3d at 996 ("In examining the factual allegations of the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity"); *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).  "More than mere conclusory notice pleading is required. . . .   A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  *Dalrymple*, 334 F.3d at 996 (citations omitted).

> Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims.  This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right. Accordingly, when reviewing a . . . motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement.

*Id.*

In the instant case, it is undisputed that Tirey acted within his discretionary authority as the sheriff of Walker County.[8]  It was only by virtue of his position as Walker County sheriff that Tirey had any authority

---

[8]This position was not disputed in Plaintiff's response to Tirey's originally filed Motion to Dismiss.  *See* Doc. 24.

to hire, retain, supervise or otherwise interact with NET generally and Defendant Hadder specifically.  As the Complaint specifically alleges that Tirey acted in this capacity, he clearly overcomes the low hurdle of establishing that he acted within his discretionary authority.

Having conceded that Tirey was acting within his discretionary authority, the burden shifts to Plaintiff to demonstrate a constitutional violation.  "It is axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior." *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Williams v. Cash*, 836 F.2d 1318, 1320 (11th Cir. 1988); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985); *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388 (11th Cir. 1981). However, "[s]upervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citing *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988);

*H.C. by Hewett*, 786 F.2d at 1086-87; *Fundiller*, 777 F.2d at 1443; *Wilson v. Attaway*, 757 F.2d 1227, 1241 (11th Cir. 1985)).  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  *Id.  See also Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988); *Fundiller*, 777 F.2d at 1443; *Wilson*, 757 F.2d at 1241.   The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.  *Id.*

In this case, Plaintiff has not claimed that Tirey personally was involved in his alleged beating, however, he alleges that Tirey,

> as a matter of custom and practice, has, with deliberated indifference, wrongfully hired and failed to adequately discipline, train, supervise defendant Hadder, thereby allowing or causing said officer to engage in unlawful conduct set out in the complaint, and specifically to engage in the use of unlawful and excessive force against the plaintiff; and that the excessive force exercised against the plaintiff was not an isolated incident, but instead, is just one incident evidencing a widespread custom and practice of Hadder and Brown using excessive force against citizens of Alabama of which Tirey and Walker County had actual knowledge of, but nonetheless hired Hadder and later Brown, condoned, and failed to discipline said officers for their repeated wrongful use of force.

(Doc. 24 at 5-6.)

To support this allegation, Plaintiff amended his Complaint to allege that "[p]rior to the attack on the plaintiff, Sheriff Tirey had notice that there was video footage of defendants Hadder and [Wes] Brown beating a citizen without any cause or justification and then giving each other high fives while [Defendant Wes] Brown stated that he had not "whipped no but [sic] like that in a long time."  (Doc. 39 at ¶ 36.)  Plaintiff also claims that "[p]rior to hiring Hadder, and prior to Hadder's attack on the plaintiff, Sheriff Tirey was also on notice that Hadder had been discharged from the ABC Board for disciplinary misconduct."  *Id.* at ¶ 37.  Also, Plaintiff alleges that "[p]rior to hiring [Defendant Wes] Brown, and prior to Brown's attack on the plaintiff, Sheriff Tirey was also on notice of the fact that Brown, while a policeman in Lynn, Alabama, had been involved in an assault on citizen where it was determined that Brown used excessive force against said citizen."  *Id.* at ¶ 38.

Plaintiff further claims that,

on regular occasion, inmates in custody of Sheriff Tirey and the Walker County Jail, including but not limited to Vandarious

Green, John Doe, an unidentified white male approximately 28-30 years old, James F. Wallace, Chris Spencer, Blake Salter, David King, Arthur Clark, David Files, Kenji Hill, Bobby Walker, and numerous other inmates were beat, maced or otherwise subjected to the use of excessive force.

*Id.* at ¶ 43.  Moreover,

[p]rior to the attack on the plaintiff, as a matter of custom and practice, Sheriff Tirey instructed police employees under his control to use excessive force against citizens in custody to maintain control, and to discipline them for noncompliance, including an instance wherein Tirey instructed officers under his control to beat Jerrell Cochran, an inmate in Tirey's custody. On another occasion, Tirey watched as Officer Fielding, without cause or justification, beat, kicked and maced James F. Wallace.

*Id.* at ¶ 44.  Finally, Plaintiff claims that "Sheriff Tirey established the use of a chair within the jail where inmates were strapped into the chair and then a football helmet put on their heads and then the inmates were beat as punishment for noncompliance with his, or other police officers within his control, orders."  *Id.* at ¶ 45.

In this cause, however, Plaintiff's Complaint fails to demonstrate any correlation between the fight that occurred in Tuscaloosa County, and specific conduct by Tirey, or any other entity, that occurred in Walker County.   As discussed extensively above, Plaintiff failed to make any

showing that Hadder was acting pursuant to any authority possessed by virtue of his employment by the state.  Because there was no underlying violation of Plaintiff's constitutional rights by a state actor, his claim against Tirey necessarily fails.  *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (holding that if the plaintiff suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations [or the sheriff's practices] might have authorized the use of constitutionally excessive force is quite beside the point).

   3.   State Law Claims.

Plaintiff also appears to make several state law claims specifically against Sheriff Tirey.  Plaintiff's state law claims include: (1) negligent, careless and unskillful conduct; (2) negligent retention and supervision; and (3) negligent/wanton hiring.

Under Alabama law, each county sheriff is an executive officer of the State.  *See* Article V, § 112 of the Alabama Constitution; *McMillian v. Monroe County,* 520 U.S. 781, 793 (1997) (holding that an Alabama sheriff represents the State of Alabama when executing law enforcement duties).  As an executive branch, constitutional officer of the State, Sheriff Tirey is

immune from suit under Article I, § 14 of the Alabama Constitution of 1901.

Section 14 immunizes Sheriff Tirey from all state law claims, including

constitutional claims, even though sued in his individual capacity.  *Tinney*

*v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) (holding sheriff and deputy

sheriff were entitled to state sovereign immunity); *Lancaster v. Monroe*

*County*, 116 F.3d 1419, 1431 (11th Cir. 1998) (holding sheriff and jailers

were entitled to sovereign immunity); *Parker v. Amerson*, 519 So. 2d 442,

445 (1987) (holding the sheriff immune from suit although sued

"individually, and as sheriff"); *Hereford v. Jefferson County,* 586 So. 2d

209, 210 (Ala. 1991); *King v. Colbert County*, 620 So. 2d 623, 626 (Ala.

1993); *Carr v. City of Florence*, 916 F.2d 1521, 1525-26 (11th Cir. 1990); *Ex*

*parte Purvis*, 689 So. 2d 794, 795-96 (Ala. 1996) (holding sheriff and deputy

were entitled to sovereign immunity in both their individual and official

capacities); *Ex parte Haralson*, 871 So. 2d 802, 807 (Ala. 2003) (holding

deputy sheriff entitled to sovereign immunity); *Ex parte McWhorter*, 880 So.

2d 1116, 1117 (Ala. 2003) (holding deputy sheriff entitled to sovereign

immunity); *Ex parte Blankenship*, 893 So. 2d 303, 305 (Ala. 2004) (granting

immunity to deputy alleged to have been acting in the course and scope of

his duties).  Because Plaintiff seeks only money damages for conduct arising out of the performance of Tirey's duties, all of Plaintiff's state law claims against Sheriff Tirey are due to be dismissed.  *Tinney*, 77 F.3d at 383; *see also Ex parte Davis*, 930 So. 2d 497, 501 (Ala. 2005).

Furthermore, even assuming *arguendo* that sovereign immunity did not apply to Plaintiff's state law claims against Tirey, there has been no allegation that Tirey violated a duty to Plaintiff in Walker County.  Under Alabama law, sheriffs have the duty "***in their respective counties***, by themselves or deputies, to ferret out crime, to apprehend and arrest criminals and, insofar as within their power, to secure evidence of crimes in their counties . . . ."  ALA. CODE § 36-22-3(4) (emphasis added). Assuming that Hadder did everything Plaintiff alleged in his Complaint, it remains undisputed that Hadder acted outside of Walker County, and therefore outside of Sheriff Tirey's statutorily prescribed area of responsibility.  A principal cannot be held liable for the acts of an agent that are beyond the agent's authority.  *Meyer v. Wal-Mart Stores, Inc.*, 813 So. 2d 832, 838 (Ala. 2001) (quoting *Potts v. BE & K Constr. Co.*, 604 So.2d 398, 400 (Ala. 1992)). Alabama law is clear that the extent of Sheriff Tirey's jurisdiction does not

extend beyond the boundaries of Walker County.  *See* ALA. CODE §
36-22-3(4).  Even if Plaintiff were to able to prove that Hadder had a long
history of abusing his powers as a law enforcement officer, Tirey's duty to
protect persons extends only to the borders of Walker County.  Because
Plaintiff was clearly not within those borders at the time of his alleged
assault, Sheriff Tirey is not liable.

        C.     Walker County.

        Finally, Plaintiff's Complaint also fails to state a § 1983 claim against
Walker County because his allegations fail to demonstrate any violation of
Plaintiff's constitutional rights by Walker County.  Plaintiff alleges that the
county entered into a joint enterprise or partnership with Sheriff Tirey to
form the Walker County NET and can therefore also be liable for the
violation of Plaintiff's constitutional right to be free from excessive force.
He also claimed that Walker County has a systematic policy of allowing law
enforcement officers, under its supervision, to use excessive force against
its citizens without justification.

        "[T]o impose § 1983 liability on a municipality, a plaintiff must show:
(1) that his constitutional rights were violated; (2) that the municipality had

a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citations omitted). Governmental bodies generally have no constitutional duty to protect individuals from the actions of private citizens. *See DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 195 (1989). In *DeShaney*, the plaintiff contended that the Winnebago County Social Services Department deprived him of liberty without due process of law in violation of the Fourteenth Amendment by failing to protect him from violence at the hands of his father. *See id.* at 191. The Supreme Court held that the state was not constitutionally obligated to protect the plaintiff:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*Id.*

Under the facts pled in Plaintiff's Complaint, there is no nexus whatsoever between Hadder's alleged assault and any actions taken by Walker County.  As discussed above, it does not appear that Hadder used any indicia of law enforcement that would indicate that he was acting under authority of Walker County.  Nothing in the Complaint demonstrates that this incident was anything more than an alleged assault of a private citizen by another private citizen who happened to be employed as a sheriff's deputy.  Because Plaintiff has failed to identify any custom or policy by Walker County which led to a violation of Plaintiff's constitutional rights, the claims against the county must be dismissed.

Furthermore, the actions of Sheriff Tirey and his deputies cannot be attributed to Walker County.  Law enforcement activities of the sheriff and his deputies are state, not county, functions. *See McMillian v. Monroe County*, 520 U.S. 781, 793 (1997) ("Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties.").  Accordingly, "Alabama counties are not liable under a theory of respondeat superior for a sheriff's official acts that are tortuous." *McMillian*, 520 U.S. at 789.  *See also Parker,* 519 So. 2d. at 442 ("A sheriff

is not an employee of a county for purposes of imposing liability on the county under a theory of respondeat superior."); *Hereford*, 586 So. 2d at 210 (holding that a sheriff is a state, not county, employee); *King v. Walker County,* 620 So. 2d 623, 625 (Ala. 1993) ("The sheriff of Walker County is a constitutionally established executive officer of the State of Alabama (Ala. Const. 1901, Art. V, § 112, § 138) and is not considered an employee of the county for the purposes of imposing liability upon the county."); *Stark v. Madison County*, 678 So. 2d 787, 788 (Ala. Civ. App. 1996) (finding that an Alabama county has no responsibility for actions of the sheriff).  Therefore, Plaintiff's federal law claims against Walker County are due to be dismissed.

Finally, Walker County is also entitled to dismissal of Plaintiff's state law claims.  As noted above, Walker County has no law enforcement authority and cannot, as a matter of law, hire, supervise, train, or promulgate policies and customs for Sheriff Tirey and his deputies. Accordingly, Walker County cannot be held vicariously liable for any act of Sheriff Tirey or Deputy Hadder or directly liable for hiring, training, or supervising any of the Defendants in this action.

In addition, even if Walker County could be held liable for either

Hadder or Sheriff Tirey's actions, the Complaint fails to allege that the
Plaintiff has complied with the relevant statutes of non-claim under
Alabama law.  A plaintiff must submit a notice of any claim against a county
to its commission within twelve months of the alleged injury.  ALA. CODE §
11-12-8.  This notice is required for all claims against Counties, including
tort, contract and equitable claims.  *Williams v. McMillan*, 352 So. 2d 1347,
1349 (Ala. 1977); *see also Hyche Landfill, Inc. v. Winston County*, 878 So.
2d 258, 262 (Ala. 2003).   Filing a proper notice is a prerequisite to
maintaining a lawsuit against a county.  ALA. CODE § 6-5-20(a); *Williams*, 352
So. 2d at 1349; *Groeschner v. Mobile County*, 512 So. 2d 70, 72 (Ala. 1987);
*Chumney v. Houston County*, 632 So. 2d 1328, 1329 (Ala. 1994).

Section 11-12-8 is not just a limitations period, but a statute of
non-claim.  *Groeschner*, 512 So. 2d at 72.  As a statute of non-claim, §
11-12-8 is "an absolute bar to claims against a County."  *Alabama Disposal
Solutions-Landfill, L.L.C. v. Town of Lowndesboro*, 837 So. 2d 292, 300 (Ala.
Civ. App. 2003) (*citing City of Birmingham v. Davis*, 613 So. 2d 1222 (Ala.
1992)).

Plaintiff's Complaint fails to allege that he filed a claim with the

Walker County Commission.  Therefore, as a matter of law, his Complaint fails to allege the prerequisite necessary to assert claims against Walker County and must be dismissed.  ALA. CODE § 6-5-20(a); *Williams*, 352 So. 2d at 1349; *Groeschner*, 512 So. 2d at 72; *Chumney,* 632 So. 2d at 1329.

V.     Conclusion.

      For the foregoing reasons, the Court concludes that Defendants' motions to dismiss shall be granted as to all of Plaintiff's federal claims. Further, Plaintiff's state-law claims shall be dismissed as to both Tirey and Walker County, but not Hadder.  A separate order will be entered in conformity with this opinion.

      Done this 27th day of March 2008.

                                        L. SCOTT COOGLER
                          UNITED STATES DISTRICT JUDGE
                                                        **153671**